IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EDDIE BROWNLEE, | ) | Case No. 1:19-cv-1993 |
| | ) | |
| Petitioner, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| DAVID YOST, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION[1]** |

Eddie Brownlee was arrested after a controlled drug purchase, in which his drug customer Robert Williams participated as a state informant.  So Brownlee told Ryan Motley and two of his associates to "f*** [him] up."  Motley – using Brownlee's gun – shot and killed Williams.  A Cuyahoga County, Ohio jury convicted Brownlee of aggravated murder, conspiracy to murder, murder, felonious assault, aggravated burglary, and kidnapping (each with firearm specifications).  And he was sentenced an aggregate prison term of 36 years' imprisonment, followed by a term of life imprisonment.

Brownlee, through counsel, now seeks a writ of habeas corpus under 28 U.S.C. § 2254, on four grounds:

> **GROUND ONE**: Petitioner was deprived of a fundamentally fair trial, as guaranteed by the U.S. Constitution's 5th Amendment.

---

[1] This matter is before me by an automatic order of reference under Local Rule 72.2 for preparation of a report and recommendation.  Chief Judge Patricia A. Gaughan also issued a differential case management initial order for administrative track cases reflecting the automatic order of reference.  ECF Doc. 2.

**GROUND TWO**: Petitioner was denied due process of law where the conviction [was] obtained in want of constitutionally sufficient evidence.

**GROUND THREE**: Ineffective assistance of counsel.

**GROUND FOUR**: The Petitioner's right to be presumed innocent was violated where a burden-shift occurred so as to relieve the government of its duty to demonstrate that the murder actually occurred at the petitioner's behest and not on the basis of an independent animus owned by the shooter himself.

ECF Doc. 1 at 6-11; *see also* ECF Doc. 4 (brief in support).[2]  Respondent Warden Kenneth Black[3] filed a return of writ, asserting that all of Brownlee's claims are noncognizable, procedurally defaulted, meritless, and/or insufficiently argued.  ECF Doc. 11.  Brownlee filed a traverse, in which he restates the claims in his petition, advances new arguments not previously raised, and attaches additional evidence.  ECF Doc. 12.  Because I agree that Brownlee's claims are noncognizable, procedurally defaulted, meritless, and/or insufficiently articulated, I recommend that the Court DISMISS each claim and DENY Brownlee's petition for writ of habeas corpus.

---

[2] Although Brownlee used the prescribed form for his habeas petition, he didn't state the supporting facts for his claims on the form.  ECF Doc. 1 at 6, 8, 9, 11.  Instead, he stated "See corresponding brief in support."  *Id.*  But he didn't file a brief in support with his petition.  Instead, a few days after filing his petition, Brownlee moved to file a delayed brief within 120 days.  ECF Doc. 3.  The court gave him 30 days.  He filed what appeared to be a preliminary draft (with counsel's margin notes and tracked edits) on October 6, 2019.  ECF Doc. 4.  On October 18, 2019, he filed an "amended brief" (again with counsel's margin notes and tracked edits) and a motion to restrict and seal his original brief and accept his "amended brief."  ECF Doc. 6; ECF Doc. 7.  The court denied the motion because Brownlee didn't state why his original brief should be sealed and an amended brief permitted.  And the court *sua sponte* struck the "amended brief" because it appeared to be another preliminary draft (with the same margin notes and tracked edits).  ECF Doc. 9; *compare* ECF Doc. 4, *with* ECF Doc. 6 (discernably differing only in pagination).

[3] Brownlee is housed at the Richland Correctional Institution, and Kenneth Black (the warden at that facility) is the proper respondent in this case.  *Rumsfeld v. Padilla*, 542 U.S. 426, 435-36 (2004) (The proper habeas respondent "is the warden of the facility where the [petitioner] is being held.").

## I.     State Court Proceedings

### A.     Trial Court

On June 25, 2015, a Cuyahoga County, Ohio grand jury returned a ten-count indictment

against Brownlee charging him as follows:

| Count | Charge | Ohio Rev. Code | Offense Date | Specification(s) |
|---|---|---|---|---|
| 1 | Aggravated Murder – UF | 2903.01(A) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 2 | Aggravated Murder – UF | 2903.01(B) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 3 | Conspiracy to Murder – F1 | 2923.01(A)(1) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 4 | Murder – UF | 2903.02(B) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 5 | Murder – UF | 2903.02(B) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 6 | Felonious Assault – F2 | 2903.11(A)(1) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 7 | Felonious Assault – F2 | 2903.11(A)(2) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 8 | Aggravated Burglary – F1 | 2911.11(A)(1) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 9 | Aggravated Burglary – F1 | 2911.11(A)(2) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |
| 10 | Kidnapping – F1 | 2905.01(A)(3) | 11/14/15 | 1 and 3 Yr. Firearm 2941.141, 2941.145 |

ECF Doc. 11-1 at 5.  Brownlee pleaded not guilty to the indictment.  ECF Doc. 11-1 at 17.

The case proceeded to jury trial on October 6, 2016.  Evidence adduced at trial showed

that:

> {¶4}  . . . after receiving complaints about drug-dealing, the police made three
> controlled drug buys from the victim.  The victim was arrested and agreed to
> cooperate in a buy-bust operation against Brownlee, his drug supplier.  The victim
> and his girlfriend made three controlled drug buys from Brownlee and Brownlee's
> girlfriend, codefendant Sheila McFarland.  The police arrested Brownlee and
> McFarland after the third controlled drug buy.

> {¶5}  In a phone call he made while being held in jail, Brownlee told one of his
> associates, Ryan Motley, that he suspected that the victim had betrayed him.  He
> said that he would be released from jail shortly and, with respect to the victim,
> that "we gonna handle it."  Motley then went to a hotel room where Brownlee had
> been staying and took a gun belonging to Brownlee.  In another telephone
> conversation, Brownlee told Motley to "[g]et those motherf***ers" and to
> "handle it."  After Brownlee had been released from jail, he and Motley met at
> Brownlee's hotel room.  Motley testified that Brownlee wanted him to "f*** up"
> the victim.  At some earlier point in time, Motley had given the gun he took from
> Brownlee's hotel room to Brownlee's brother, but after meeting with Brownlee at
> the hotel room, Motley retrieved the gun from Brownlee's brother.

> {¶6}  The victim's girlfriend said that on the night before the victim's murder, she
> overheard a call Brownlee made to the victim.  Brownlee said that both the victim
> and the girlfriend "are gonna see our graves."  She testified that not long after that

3

call ended, the victim told her that a black truck with four men pulled up in front of their apartment.  The men, one of whom was Brownlee, exited the truck and pointedly stood by the truck watching their apartment.  When the victim told the men that he was calling the police, they left.  The police arrived quickly and advised the victim and the girlfriend to stay somewhere else that night.  They left the apartment, but they decided to return just a few hours later.

{¶7}  More threatening calls followed.  Motley testified that he recruited two others and drove to the victim's apartment building.  Armed with Brownlee's gun and wearing a mask and gloves, Motley and his associates waited in a stairwell for the victim to leave his apartment.  When the victim left the apartment, Motley pulled out the gun and "bum-rushed" the victim.  According to Motley, the victim started "running towards me."  Motley testified that he "squeezed the gun to make sure [the victim] doesn't take it from me and it went off."  From inside the apartment, the girlfriend heard the victim say, "somebody help me" and then heard a gunshot.  The victim had been shot in the chest.

{¶8}  Motley and his companions fled the building.  He called Brownlee and said, "it's done."  On orders from Brownlee, he threw the gun into an abandoned car.  Later that evening, Motley went to Brownlee's hotel room and told him that "I made a mistake and shot him."  Brownlee replied, "it's gonna be all right.  And hate to see him go like that, but what's done is done."  Brownlee gave Motley cocaine with a street value of $2,800 in drugs as payment.[4]

ECF Doc. 11-1 at 130-32.

Brownlee was originally scheduled for a joint trial with Motley, but Motley pleaded

guilty the day before trial.  ECF Doc. 11-1 at 142.  Pursuant to his plea agreement, Motley

agreed to testify against Brownlee and made a proffer of the testimony he would give.  ECF Doc.

11-1 at 142.  Brownlee moved for a continuance, which the court denied because Brownlee had

prior notice that the state would rely on recorded telephone conversations involving Brownlee

and Motley and was well-aware of the possibility that statements or testimony from Motley

might be used against him.  ECF Doc. 11-1 at 142-43.  During the trial, the court admitted (over

the state's objection:

A 90-minute long recording of a proffer made by Motley as part of his guilty plea. [T]he defense played a 10-15 second excerpt of that proffer to the jury in which Motley stated that Brownlee did not know that he took the gun from the hotel

---

[4] "How now, a rat? Dead, for a ducat, dead!"  William Shakespeare, *Hamlet*, Act III, Sc. IV (1609).

4

room. . . .  After the jury announced that it had reached a verdict, but before that verdict had been announced, defense counsel informed the court that [the recording] had not been given to the jury and asked for a mistrial on that basis.

* * *

During the discussion on the motion for a mistrial, one of the defense attorneys told the court that after trial commenced, the recording had been made available to the defense through the discovery portal (presumably as a digital file) and that an assistant prosecuting attorney would "put it on disk."  The process of putting the recording on disk continued during and after closing arguments. . . . [T]he disk was not completed until after the jury announced that it had reached a verdict.  The court seemed unaware that at the time it admitted the exhibit into evidence, the evidence did not exist in nondigital form.

ECF Doc. 11-1 at 137-38.  The trial court denied the motion for mistrial because:

(1) it was unlikely that the jury would have listened to the entire recording; (2) defense counsel did not call the error to the court's attention in a timely manner; and (3) ordering the jury to redeliberate on the basis of 10-15 seconds of evidence might cause it to believe that the court wanted the jury to place additional emphasis to the exhibit.

ECF Doc. 11-1 at 138.

On October 17, 2016, the jury returned verdicts finding Brownlee not guilty of Counts 1, 7, and 9 and guilty of all other counts.  ECF Doc. 11-1 at 19.  On October 19, 2016,[5] the trial court sentenced Brownlee to a term of life in prison without the possibility of parole on Count 2; eleven-year prison terms each on Counts 3, 8 and 10; and a three-year prison term on the merged firearm specifications.  Counts 4, 5, and 6 were merged with Count 2 for sentencing.  The prison terms in Counts 2, 3, 8 and 10 were ordered to be served consecutively to each other and consecutive to the three-year term on the firearm specification.  The aggregate sentence was thirty-six years to be followed by life in prison with no parole.  ECF Doc. 11-1 at 22.

---

[5] The judgment entry of conviction was journalized on October 27, 2019.

**B.**     **Direct Appeal**

On November 1, 2016, Brownlee, through new counsel, filed a notice of appeal to the

Ohio Court of Appeals.  ECF Doc. 11-1 at 25.  Brownlee asserted ten assignments of error:

I.      The trial court committed plain error in failing to instruct the jury on the
        nature and weight to be given accomplice testimony after a plea bargain.

II.     The trial court erred in failing to grant defense counsel's motion for a
        mistrial after learning that defense exhibits did not reach the jury during the
        deliberation period, which had already concluded in a verdict.

III.    The trial court deprived appellant of due process under the Ohio and United
        States Constitution in failing to hold a hearing or grant a motion for mistrial
        based on the trial court's presumption of appellant's guilt.

IV.     The trial court abused its discretion in failing to grant a defense request for
        a continuance the day of trial, when just the night prior the State of Ohio
        revealed that three co-defendants had decided to plead guilty and would be
        testifying against appellant.

V.      The trial court committed plain error and the prosecution misconduct in
        telling the jury that the judge was going to be able to be able to assess the
        credibility of a witness to see whether the witness testified "truthfully" for
        purposes of upholding a plea bargain.

VI.     Defense counsel provided ineffective assistance in failing to request an
        instruction cautioning the jury regarding accomplice testimony pursuant to
        a plea bargain; and for failing to assure that all evidence reached the jury
        room for deliberation.

VII.    Insufficient evidence existed for appellant's conviction of aggravated
        murder, conspiracy, or murder.

VIII.   The manifest weight of the evidence failed to support conviction for
        aggravated murder, conspiracy, or murder.

IX.     The trial court failed to merge the allied offenses of conspiracy, kidnapping.
        and aggravated burglary, and failed to otherwise exclude sentence lengths
        for merged offenses from its journal entry.

X.      The trial court committed constitutional error through vindictive in

6

sentencing, by imposing maximum fines, costs, and consecutive, maximum sentences against appellant for each count after he went to trial.

ECF Doc. 11-1 at 36.  On March 1, 2018, the Ohio Court of Appeals affirmed in part and reversed and remanded in part[6] Brownlee's convictions and sentences.  *State v. Brownlee*, , 2018-Ohio-739 (Ohio App. Ct. 2018); ECF Doc. 11-1 at 127-53.

### C.    Appeal to Ohio Supreme Court

On June 28, 2018, Brownlee appealed to the Ohio Supreme Court.  ECF Doc. 11-1 at 188, 190.  Brownlee asserted eight propositions of law:

I.      The omission of Ohio's jury instruction in R.C. 2923.03(D) is reversible error where a reasonable probability existed that, with the instruction, a defendant's outcome could have been different at trial.

II.     In a jury trial, a judge may not be deemed able to verify the "truthfulness" of witness testimony for purposes of fulfilling the terms of a government plea deal without prejudicially offending an appellant's right for the jury to be the sole determiner of the veracity of trial testimony.

III.    Insufficient evidence existed for appellant's conviction of aggravated murder, conspiracy, or murder.

IV.    The manifest weight of the evidence failed to support conviction for aggravated murder, conspiracy, or murder.

V.     The trial court deprived appellant of due process under the Ohio and united states constitution in failing to hold a hearing or grant a motion for mistrial based on the trial court's presumption of appellant's guilt.

VI.    The trial court erred in failing to grant defense counsel's motion for a mistrial after learning that defense exhibits did not reach the jury during the deliberation period, which had already concluded in a verdict.

VII.   The trial court abused its discretion in failing to grant a defense request for a continuance the day of trial, when just the night prior the State of Ohio revealed that three codefendants had decided to plead guilty and would be testifying against appellant.

---

[6] The Court of Appeals reversed only on the ground that Brownlee's Kidnapping conviction should have merged with his aggravated murder conviction at sentencing and remanded for the state to elect which merged conviction to proceed with at a re-sentencing hearing.  ECF Doc. 11-1 at 147.

VIII.   The trial court committed constitutional error through vindictive in sentencing, by imposing maximum fines, costs, and consecutive, maximum sentences against appellant for each count after he went to trial.

ECF Doc. 11-1 at 192.  On August 29, 2018, the Supreme Court of Ohio declined to accept jurisdiction of the appeal.  *State v. Brownlee*, 153 Ohio St.3d 1469, 2018-Ohio-3450, 2017 (Aug. 29, 2018); ECF Doc. 11-1 at 242.  Brownlee did not appeal that decision to the United States Supreme Court.

### D.    Post-Conviction Motion

On March 2, 2017, while his direct appeal was pending before the Ohio Court of Appeals, Brownlee filed a *pro se* post-conviction petition and a motion for summary judgment. ECF Doc. 11-1 at 244, 250.  Brownlee asserted that his constitutional protections against being placed in double jeopardy or being subjected to cruel and unusual punishment were violated when the trial court sentenced him on allied offenses of similar import.  On March 20, 2017, the trial court denied both motions.  ECF Doc. 11-1 at 254, 256.  Brownlee did not appeal.

### E.    Resentencing

On August 1, 2018, the trial court held a resentencing hearing following the Ohio Court of Appeals' partial reversal and remand.  ECF Doc. 11-1 at 258.  The state elected to proceed to sentencing on the merged aggravated murder conviction (Count 2), and the court re-imposed a sentence of life imprisonment without possibility of parole plus the three-year firearm specification on that count.  ECF Doc. 11-1 at 258.  The court re-imposed the eleven-year prison terms for Counts 3 and 8.  ECF Doc. 11-1 at 258.  And the court merged the firearms specifications and imposed a consecutive three-year prison term for the specification.  ECF Doc. 11-1 at 258.

## II.    Law and Analysis

To obtain a writ of habeas corpus, Brownlee has the burden to prove that he is "in custody in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).  Additionally, Brownlee must show that each claim he presents meets all the jurisdictional and procedural requirements to obtain merits review by the federal habeas court. *See*, *e.g.*, 28 U.S.C. § 2254(b) (exhaustion); 28 U.S.C. § 2244(d) (statute of limitations).  I conclude that Brownlee can't meet his burden to establish a right to federal habeas relief with respect to any of the claims raised in his petition and traverse.

### A.    Ground One:  Due Process

Brownlee's petition generally asserts that he was "deprived of a fundamentally fair trial" in violation of the Fifth Amendment.  ECF Doc. 1 at 6.  In his brief, Brownlee divides his argument into four sub-claims that the trial court: (1) unconstitutionally expressed bias, depriving him of the presumption of innocence, (ECF Doc. 4 at 16-19); (2) improperly failed to give the jury the accomplice testimony instruction prescribed under Ohio Rev. Code § 2923.03(D), (ECF Doc. 4 at 19-22); (3) abused its discretion by overruling his motion to continue the trial when his co-defendant pleaded guilty, made a proffer, and agreed to testify the day before trial, (ECF Doc. 4 at 22-24); and (4) abused its discretion by refusing to hold a hearing or declare a mistrial after learning that exculpatory evidence hadn't reached the jury during deliberations, (ECF Doc. 4 at 24-26).  Brownlee argues that each of these alleged errors "coalesced" to deprive him of his right to fundamentally fair trial, in violation of his right to due process under the Fourteenth Amendment.  ECF Doc. 4 at 15.

### 1.    "Coalescence"

Brownlee's cumulative effort claim – that the "coalescence" of the alleged trial court errors deprived him of a fundamentally fair trial – isn't cognizable.  *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006) (explaining that the Supreme Court hasn't spoken on the issue of cumulative error); *Rosebrook v. Haviland*, No. 1:19-cv-903, 2020 U.S. Dist. LEXIS 226682, at *21 (N.D. Ohio Apr. 13, 2020).  Accordingly, to the extent Brownlee's Ground One claim alleges cumulative error, I will recommend that his Ground One claim be DISMISSED IN PART as noncognizable.

Nevertheless, this court may consider whether any of Brownlee's alleged errors *individually* justifies habeas relief.  *Cf. Ramsey v. Phillips*, No. 20-3452, 2020 U.S. App. LEXIS 35002, at *7 (6th Cir. Nov. 4, 2020) (explaining that, even if cognizable, a cumulative error claim would fail if its component claims were procedurally defaulted or meritless).

### 2.    Judicial Bias

Brownlee's judicial bias sub-claim actually refers to multiple statements by the trial judge.  The first statement about which Brownlee complains occurred before the commencement of trial in a hearing at which Brownlee declined to accept the prosecutor's plea offer.  ECF Doc. 4 at 16-17.  The trial judge stated:

> I'm convinced your attorneys are professional enough to deal with it.  I mean, we really don't know what everybody's going to say to everything until we ask them. But it's sort of like, should we move the deck chair from this side to that side of the Titanic.  That's in my estimation. If you think you could walk out of this courtroom with a not guilty on all 14 counts, I'll tell you what, go buy a lottery ticket too.

ECF Doc. 4 at 16-17; *see also* ECF Doc. 13-1 at 16 (the "Titanic comment").  Next, Brownlee challenges the trial judge's plea hearing statement that:

10

> You may find it interesting and – you know, yesterday I said you might need some street cred if you're going down for 20, 25, 28, whatever. And just today that was confirmed to me.

ECF Doc. 4 at 17; *see also* ECF Doc. 13-1 at 18. (the "Street Cred comment").  Third, Brownlee asserts that the trial judge improperly commented that the defense was "just throwing Hail Marys up."  ECF Doc. 4 at 18 (emphasis original) (the "Hail Mary comment").  Brownlee asserts that the Titanic comment and Street Cred comment demonstrated that the trial court had presumed he was guilty and was biased against him.  ECF Doc. 4 at 17-18.  He also asserts that the Hail Mary comment – made in the jury's presence – was a clear expression of Brownlee's guilt, something that federal courts have long warned a trial judge should not do.  ECF Doc. 4 at 18-19.  And Brownlee argues that prejudice should be presumed and asserts that the comments deprived Brownlee of his presumption of innocence and his right to a fair trial.  ECF Doc. 4 at 17-19.

### a.      Procedural Default

Warden Black correctly responds that Brownlee's challenges to the Titanic and Street Cred comments are procedurally defaulted because he never raised those issues on appeal to the Ohio Supreme Court.  ECF Doc. 11 at 15.  A claim is procedurally defaulted (and barred from federal habeas review) when, among other things, the petitioner failed to "fairly present" it to the state courts while remedies were still available.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 843 (1999); *Williams v. Anderson*, 460 F.3d 789, 806 (6th Cir. 2006) (petitioner must have asserted the same legal and factual basis for his claim at each stage of the state courts' review process).  Review of the record confirms that Brownlee never challenged the Titanic or Street Cred comments on appeal to the Ohio Supreme Court – leaving the factual basis for such claims unasserted.  *Williams*, 460 F.3d at 806; *see generally* ECF Doc. 11-1 at 191-207 (memorandum in support of jurisdiction before the Ohio Supreme Court).  And, because the time to raise such

challenges has passed, those claims are procedurally defaulted.  *Williams*, 460 F.3d at 806; *see also* Ohio S. Ct. Prac. R. 7.01(A)(1) (a criminal defendant must appeal a decision affirming his conviction within 45 days).

Procedural default may be excused when the petitioner shows that: (1) an external factor that can't be fairly attributed to the petitioner caused the default and actual prejudice resulted from the alleged violation; or (2) denying review of a defaulted claim would result in a "fundamental miscarriage of justice."  *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *see also Smith v. Warden, Toledo Corr. Inst.*, 780 F. App'x 208, 220-21 (6th Cir. 2019) (explaining that a "fundamental miscarriage of justice" requires the petitioner to show that his claim is based on new evidence that would reasonably have lead jurors to conclude that he was actually innocent). But Brownlee hasn't argued that any external cause prevented him from challenging the Titanic and Street Cred comments before the Ohio Supreme Court, and his challenges to the trial court's comments don't rely on new evidence of actual innocence.  *See generally* ECF Doc. 1; ECF Doc. 12 at 17-22; *see also Bousley v. United States*, 523 U.S. 614, 623 (1998) ("[A]ctual[] innocen[ce]" means "factual innocence, not mere legal insufficiency.").  Thus, Brownlee has not met his burden to overcome the procedural default of his challenges to the Titanic and Street Cred comments.

Accordingly, I will recommend that Brownlee's judicial bias sub-claims be DISMISSED IN PART as procedurally defaulted.

### b.    Merits

Brownlee presented his challenge to the Hail Mary comment to the Ohio Court of Appeals and the Ohio Supreme Court, so the court can reach that claim on the merits. *O'Sullivan*, 526 U.S. at 843; ECF Doc. 11-1 at 56-58, 203-04.  "[D]ue process demands that [a

trial] judge be unbiased."  *Railey v. Webb*, 540 F.3d 393, 399 (6th Cir. 2008) (citing *In re*

*Murchison*, 349 U.S. 133, 136 (1955)).  To succeed on a judicial bias claim, the petitioner must

point to evidence showing that the trial judge had a "predisposition . . . so extreme as to display

clear inability to render fair judgment."  *Liteky v. United States*, 510 U.S. 540, 551 (1994); *Lewis*

*v. Robinson*, 67 F. App'x 914, 922 (6th Cir. 2003) (citing *Burton v. Jones*, 321 F.3d 569, 577

(6th Cir. 2003)).  As evidence for his judicial bias claim, Brownlee points only to *defense*

*counsel*'s statement – outside the jury's presence – that:

> *my client and co-counsel* came to understand that you *may have* indicated that . . .
> at this point we're just throwing Hail Marys up.  And on those grounds I just
> don't think it's an appropriate comment *if it were made in the presence of the jury*
> and I would be required to ask the Court for a mistrial under those circumstances.

ECF Doc. 11-7 at 94 (emphasis added).  But, as the Ohio Court of Appeals reasonably

concluded[7], evidence that counsel made an allegation isn't evidence that: (1) the trial court

actually made the Hail Mary comment; or (2) any such comment was made in the jury's

presence.  ECF Doc. 11-1 at 140-41.  And, because Brownlee did not then and has not now

pointed to any evidence that the trial court actually made such a statement, he cannot show that

the Ohio courts' rejection of his judicial bias claim based on the Hail Mary comment was an

unreasonable determination of the facts or contrary to clearly established federal law.  ECF Doc.

11-1 at 141; 28 U.S.C. § 2254(d); *Mays v. Hines*, 141 S. Ct. 1145, 1149 (Mar. 29, 2021)

(explaining that "unreasonable" doesn't mean "erroneous," but instead requires a petitioner to

show that there was such an extreme malfunction in the proceeding that there isn't even room for

fair minded disagreement that the decision was wrong).  Thus, Brownlee cannot meet his burden

---

[7] Because the Ohio Supreme Court declined jurisdiction, this court must look to the reasoning in Ohio
Court of Appeals' decision.  *Nian v. Warden, N. Cent. Corr. Inst.*, 994 F.3d 746, 754 (6th Cir. Apr. 19,
2021) ("Because the Ohio Supreme Court declined to exercise jurisdiction over the case, we must look to
the Ohio Court of Appeals' opinion or the trial court's order" as the last reasoned decision of the state
courts.).

to show that he is in custody in violation of the Constitution or laws and treaties of the United States based on his judicial bias sub-claim. 28 U.S.C. § 2254(a).

Accordingly, I will recommend that Brownlee's judicial bias sub-claim be DENIED IN PART as meritless.

### 3.  Jury Instructions

Brownlee's jury instructions sub-claim argues that the trial court violated his due process rights when it failed to give the accomplice testimony instruction required under Ohio Rev. Code § 2923.03(D).  ECF Doc. 4 at 19-22.  But Warden Black responds that Brownlee's jury instructions sub-claim is procedurally defaulted because he never raised it as a federal constitutional claim before the Ohio courts.[8]  ECF Doc. ECF Doc. 11 at 17-19.

Warden Black is right.  Brownlee's accomplice testimony sub-claim is procedurally defaulted because he never fairly presented to the Ohio courts a *due process* challenge to the trial court's failure to give the accomplice testimony instruction.  *O'Sullivan*, 526 U.S. at 843; *Williams*, 460 F.3d at 806.  On appeal to the Ohio Court of Appeals and Ohio Supreme Court, Brownlee argued only that the trial court committed *plain error* by not giving the accomplice testimony instruction, as required under *Ohio law*.  ECF Doc. 11-1 at 51-53, 200-01.  And the Ohio Court of Appeals reviewed the claim only for *plain error* under *Ohio law*.[9]  ECF Doc. 11-1 at 133-36.  Because Brownlee never "fairly presented" his jury instruction sub-claim to the Ohio courts by raising it as a *federal constitutional issue*, the claim he now seeks to raise is

---

[8] Warden Black also argues that Brownlee's jury instructions sub-claim doesn't state a federal constitutional claim.  ECF Doc. 11 at 18-19.  But Brownlee has clearly alleged that the failure to give an accomplice testimony instruction violated his *due process rights under the Fourteenth Amendment*.  ECF Doc. 4 at 19-22.  And that's a constitutional claim that courts in this circuit have addressed.  *See*, *e.g.*, *Goff v. Bagley*, 601 F.3d 445, 469-71 (6th Cir. 2010) (addressing the same claim on the merits).

[9] The Ohio Court of Appeals also addressed a related ineffective-assistance-of-counsel claim, which is discussed in Section II.C., below.

procedurally defaulted.  *Williams*, 460 F.3d at 806 (citing *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984)) (the petitioner must have raised the *federal constitutional issue* to the state courts, not just a similar state law issue); *Thompson v. Warden, Belmont Corr. Inst.*, 598 F.3d 281, 285 (6th Cir. 2010) (same).  Even if Brownlee had raised the *federal constitutional issue* he now seeks to present, the Ohio Court of Appeals' application of plain error review (when Brownlee's failure to raise the issue before the Ohio court barred him from bringing the merits of his claim on direct review), didn't actually constitute a *merits* review of his claim by the Ohio Court of Appeals.  *See Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (explaining that plain error review is doesn't address the merits of an issue, but instead addresses whether the courts might overlook a procedural bar to addressing the merits of an issue); *accord Stalling v. Burt*, 772 F. App'x 296, 299 (6th Cir. 2019).  Moreover, Brownlee cannot overcome the procedural default of his accomplice testimony instruction sub-claim because: (1) he hasn't argued that any external cause prevented him from raising his claim as a federal constitutional issue before the Ohio Court of Appeals and Ohio Supreme Court; and (2) his claim doesn't rely on new evidence of actual innocence.  *Coleman*, 501 U.S. at 750; *Smith*, 780 F. App'x at 220-21; *Bousley*, 523 U.S. at 623.

Accordingly, I will recommend that Brownlee's accomplice testimony sub-claim be DISMISSED as procedurally defaulted.[10]  28 U.S.C. § 2254(b).

---

[10] Even if the court were to review Brownlee's accomplice testimony sub-claim on the merits, I would recommend that it be dismissed as meritless.  Although the court didn't give the jury an accomplice testimony instruction, it instructed the jury that it had the sole authority to assess the credibility of witnesses, explained the different considerations that the jury might weigh in doing so (including witness bias or interests in testifying), and informed the jury that it might choose to believe none, some, or all of a witness's testimony.  ECF Doc. 11-7 at 172-75.  And that's all the Constitution requires.  *See Goff v. Bagley*, 601 F.3d 445, 469-71 (6th Cir. 2010) (holding that similar instructions satisfied the U.S. Constitution when a trial court failed to give an Ohio Rev. Code § 2923.03(d) instruction).

### 4.      Continuance Denial & Mistrial

Brownlee's continuance denial sub-claim contends that the trial court abused its discretion when it denied his motion to continue the trial on the basis that Motley had pleaded guilty and agreed to testify the day before trial started.  ECF Doc. 4 at 22-24.  Similarly, Brownlee's mistrial sub-claim argues that the trial court abused its discretion when it denied his motion for a mistrial or hearing after learning that a recording of Motley's proffer was never given to the jury.  ECF Doc. 4 at 24-26.  Brownlee acknowledges both he and the prosecution relied on segments of the recorded proffer that were played during trial, but he asserts that a having a recording would have been "critical for the jury's deliberation."  ECF Doc. 4 at 26; ECF Doc. 12 at 29.  Warden Black responds that neither of these sub-claims present a cognizable federal habeas claim, and any federal constitutional claims that might be construed from them are procedurally defaulted.  ECF Doc. 11 at 19-25.

### a.      Cognizability

Warden Black is correct that Brownlee's continuance denial sub-claim isn't cognizable because it doesn't raise a federal constitutional issue.  Whether a state trial court abuses its discretion in denying a motion for trial continuance is a matter of state law, and such a claim generally isn't cognizable on federal habeas review.  *See Sanders v. Kelly*, No. 5:09-cv-1272, 2011 U.S. Dist. LEXIS 155580, at *31-32 (N.D. Ohio Aug. 11, 2011), *adopted by* 2012 U.S. Dist. LEXIS 91637 (N.D. Ohio Jun. 29, 2012); *accord Smith v. Warden*, *Southern Ohio Corr. Facility*, No. 1:07-cv-977, 2009 U.S. Dist. LEXIS 110000, at *80-81 (S.D. Ohio Jul. 9, 2009), *adopted by* 2009 U.S. Dist. LEXIS 109992 (S.D. Ohio Nov. 24, 2009); *Sheppard v. Warden, Leb. Corr. Inst.*, No. 1:08-cv-298, 2009 U.S. Dist. LEXIS 126228, at *39 (S.D. Ohio Sept. 29, 2009), *adopted by* 2010 U.S. Dist. LEIS 28463 (S.D. Ohio Mar. 25, 2010).  But the denial of a

continuance could be a constitutional violation when it was "'so arbitrary and fundamentally unfair that it violate[d] constitutional principles of due process.'"[11]  *Mackey v. Dutton*, 217 F.3d 399, 408-09 (6th Cir. 2000) (quoting *Brown v. O'Dea*, 187 F.3d 572, 580 (6th Cir. 1999)) (revieing whether the denial of a continuance violated a defendant's due process rights when the defense's expert witness for his insanity plea was too ill to travel).  But Brownlee doesn't argue that the denial of a continuance in this case was *arbitrary and fundamentally unfair* (cognizable)[12]; rather, he argues only that it was an *abuse of discretion* (noncognizable).  *See generally* ECF Doc. 4 at 22-24; ECF Doc. 12 at 26-28.  Thus, Brownlee's continuance denial sub-claim doesn't raise a cognizable constitutional issue for federal habeas review.  28 U.S.C. § 2254(d).

Warden Black is also correct that Brownlee's mistrial sub-claim isn't cognizable on federal habeas review.  As with his continuance denial sub-claim, Brownlee's mistrial sub-claim asserts only that the state trial court abused its discretion.  ECF Doc. 4 at 24-26.  But a state trial court's abuse of discretion generally isn't cognizable on federal habeas review.  *Stanford v. Parker*, 266 F.3d 442, 459 (6th Cir. 2001).  A petitioner might be able to state a cognizable habeas claim if he can show that the state trial court's discretionary decision offended some principle so firmly rooted in the traditions and conscious of our system of justice that its violation made the proceeding fundamentally unfair.  *Dillon v. Warden, Ross Corr. Inst.*, 541 F. App'x 599, 605 (6th Cir. 2013) (citing *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988);

---

[11] Such a denial could also be so "unreasoning and arbitrary" that it "violates the right to assistance of counsel."  *Morris v. Slappy*, 461 U.S. 1, 11 (1983) (citing *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964)).  But Brownlee doesn't say that the denial violated his right to counsel.  *See generally* ECF Doc. 4; ECF Doc. 12.  So any such claim is forfeited.  *McPherson v. Kelsey*, 125 F.3d 989, 995 (6th Cir. 1997).
[12] Brownlee included some citations to caselaw setting out the arbitrary-and-fundamentally-unfair standard, but these passing references didn't make an argument.  *McPherson*, 25 F.3d at 995 (issues "adverted to in a perfunctory manner" are forfeited).

*Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003)).  But Brownlee hasn't argued (much less shown) that the omission of the recording and denial of his request for a mistrial falls within the narrow category of issues that make a trial fundamentally unfair.  *See generally* ECF Doc. 4 at 24-26; ECF Doc. 12 at 28-29; *Bey v. Bagley*, 500 F.3d 514, 522 (6th Cir. 2007) ("The Supreme Court has defined very narrowly the category of infractions that violates fundamental fairness."). Thus, Brownlee's mistrial sub-claim doesn't raise a cognizable constitutional issue for federal habeas review.  28 U.S.C. § 2254(d).

Accordingly, I recommend that Brownlee's continuance denial and mistrial sub-claims be DISMISSED as noncognizable.

### b.       Procedural Default

Even if the Court were to find that Brownlee's skeletal citation to caselaw setting out the arbitrary-and-fundamentally-unfair standard in his continuance sub-claim (ECF Doc. 4 at 22) and passing assertion that the denial of his request for a mistrial was "arbitrary" (ECF Doc. 4 at 26) was sufficient to imply cognizable federal habeas claims in his abuse-of-discretion claims, those claims would nevertheless be procedurally defaulted.  *O'Sullivan*, 526 U.S. 843; *Williams*, 460 F.3d at 806.  Because Brownlee didn't put his state law abuse-of-discretion claims in federal constitutional terms when he raised them before the Ohio Court of Appeals and Ohio Supreme Court, he never "fairly presented" to the Ohio courts federal constitutional claims challenging the denial of his requests for a continuance and mistrial.  ECF Doc. 11-1 at 53-55, 58-60, 204-05; *Williams*, 460 F.3d at 806; *Koontz*, 731 F.2d at 368; *Thompson*, 498 F.3d at 285   And, because the time to do so has passed, those claims are now procedurally defaulted.  Ohio R. App. P. 4(A) (30 days for direct appeal); Ohio S. Ct. Prac. R. 7.01(A)(1).  Moreover, Brownlee can't overcome his procedural default because he hasn't argued that some external cause prevented

him from challenging the denial of his requests for continuance and mistrial on constitutional grounds, and those claims don't rely on new evidence of actual innocence. *Coleman*, 501 U.S. at 750; *Smith*, 780 F. App'x at 220-21; *Bousley*, 523 U.S. at 623.

Thus, even if the Court were to find that Brownlee's continuance denial[13] and mistrial[14] sub-claims were cognizable, I would nevertheless recommend that the claims be DISMISSED as procedurally defaulted.

### 5.  Ground One Summary

Because all of the sub-claims that Brownlee raises in his Ground One due process claim are noncognizable, procedurally defaulted, or meritless, I will recommend that Brownlee's Ground One due process claim be DISMISSED IN PART as meritless and DISMISSED IN PART as noncognizable and procedurally defaulted.

### B.  Ground Two:  Sufficiency of Evidence

In Ground Two, Brownlee argues that there was insufficient evidence to support a finding that he had the requisite mental state for his aggravated murder, conspiracy to commit murder, and murder convictions.  ECF Doc. 4 at 27-29; ECF Doc. 12 at 28-32.  Specifically, Brownlee asserts that Motley's testimony – that Brownlee didn't know he took a gun, that he armed

---

[13] Brownlee's continuance denial sub-claim would also fail on the merits.  As the Ohio Court of Appeals reasonably explained in holding that the court hadn't abused its discretion, Brownlee was given prior notice that the prosecution intended to prove the conspiracy with recorded telephone conversations that he'd had with Motley, those telephone conversations were available to Brownlee ahead of trial, and there was no surprise that he might need to confront statements that Motley made.  ECF Doc. 11-1 at 143.  Moreover, Brownlee hasn't made any effort to describe *what* additional evidence he might have sought if a continuance had been granted, much less shown that such evidence would have been *favorable* to his defense. *See Mackey*, 217 F.3d at 409 (no due process violation when the defendant hadn't established that the missing expert's testimony for which he had sought a continuance would have been favorable).

[14] Brownlee's mistrial sub-claim would also fail on the merits.  The Ohio Court of Appeals reasonably held that Brownlee wasn't prejudiced when he actually played the favorable portion of the recorded proffer for the jury at trial, he didn't argue that other material on the recording was exculpatory, and he acknowledged that the recording also included material that was *favorable to the prosecution*.  ECF Doc. 11-1 at 139-40.  Thus, the denial of a mistrial based on the omission of a recording (including *inculpatory* evidence) didn't make Brownlee's trial fundamentally unfair.  *Dillon*, 541 F. App'x at 605.

himself on his own initiative, and that the gun just accidentally went off during a struggle with Williams – established that: (1) Brownlee never intended or knew that Motley would "f\*\*\* up" Williams in a manner that would lead to Williams's death; and (2) even Motley didn't intend to kill Williams while "f\*\*\*[ing him] up." ECF Doc. 4 at 27-29; ECF Doc. 12 at 28-32. Warden Black responds that the Ohio Court of Appeals reasonably determined that the evidence at trial was sufficient to sustain his convictions. ECF Doc. 11 at 25-31.

### 1. Lack of Jurisdiction

This court has no jurisdiction to determine whether sufficient evidence supported Brownlee's murder "convictions." This court has jurisdiction only to entertain claims raising challenges to convictions for which the petitioner is in state custody. 28 U.S.C. § 2254(a); *Maleng v. Cook*, 490 U.S. 488, 490-91 (1989); *Bowling v. White*, 694 F. App'x 1008, 1011 (6th Cir. 2017). But there's the rub – Brownlee isn't in custody pursuant to a (simple) murder *conviction*. Under Ohio law, a "conviction" occurs only when a defendant is both adjudged guilty *and* sentenced. *Smith v. Coleman*, 521 F. App'x 444, 449 (6th Cir. 2013) (citing *State v. McGuire*, 80 Ohio St. 3d 390 (Ohio 1997)). Because Brownlee's murder verdicts were merged with his aggravated murder conviction, no sentence was ever imposed for those verdicts and, therefore, no "conviction" was ever realized. Thus, Brownlee is not "in custody" pursuant to any murder "convictions." 28 U.S.C. § 2254(a); *Maleng*, 490 U.S. at 490-91.

Accordingly, to the extent Brownlee's claim challenges his murder verdicts, his Ground Two claim must be DISMISSED IN PART for lack of jurisdiction.

### 2. Merits

When a criminal defendant alleges that the trial evidence was insufficient to support his conviction, the court must determine whether, "viewing the evidence in the light most favorable

20

to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  The sufficiency-of-the-evidence determination is based on *all* of the evidence, even if erroneously admitted. *McDaniel v. Brown*, 558 U.S. 120, 131 (2010).  And when the sufficiency-of-the-evidence standard is filtered through the Antiterrorism and Effective Death Penalty Act's ("AEDPA") deferential standard, a federal habeas court must apply "double deference" – first to the jury's verdict and second to the state court's consideration of that verdict.  *Davis v. Lafler*, 658 F.3d 525, 531-35 (6th Cir. 2011) (*en banc*); *see also* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 88, 98-99, 102-03 (2011); *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold.").  In other words, a federal habeas court must deny habeas relief so long as the state court *reasonably* determined that a *reasonable* juror could have found the essential elements of the offense from the evidence in the record beyond a reasonable doubt.  *See Jackson*, 443 U.S. at 319; *Davis*, 658 F.3d at 531-35.

The Ohio Court of Appeals reasonably concluded that the jury reasonably concluded that the state presented sufficient evidence to support both Brownlee's convictions for aggravated murder and conspiracy to murder.  *Jackson*, 443 U.S. at 319; *Davis*, 658 F.3d at 531-35; 28 U.S.C. § 2254(d).  As explained by the Ohio Court of Appeals, it was reasonable for the jury to find that Brownlee purposely caused and planned with Motley to kill Williams based on: (1) Brownlee's comments to Motley to "get those motherf***ers" and "f*** up" Williams; (2) Williams's girlfriend's testimony that Brownlee told them that they were "gonna see [their] graves"; (3) Motley's testimony that he took Brownlee's gun from Brownlee's hotel room, went

to William's apartment with two other men donning masks and gloves, laid in wait for Williams, and pulled out the gun *before* he "bum-rushed" Williams; (4) Motley's testimony that Brownlee said "it's done" and gave him $2,800 in drugs as payment after the murder; and (5) Motley's own admission that he acted with purpose to kill Williams. ECF Doc. 11-1 at 130-33; *see also* Ohio Rev. Code § 2903.01(B) (requiring "purpose" to cause death for aggravated murder); Ohio Rev. Code § 2923.01(A)(1) (requiring purpose that a murder be committed by one of the people with whom the defendant planned the murder).  Even though other evidence – including some of Motley's testimony – could have conflicted with a finding that Brownlee intended for Motley to kill Williams, the jury was free to disbelieve any testimony (or other evidence) that it didn't think was credible. *See Matthews v. Abramajtys*, 319 F.3d 780, 788 (6th Cir. 2003) ("It is the province of the factfinder to weigh the probative value of the evidence and resolve any conflicts in testimony.").  And this court must assume that the jury resolved any such inconsistencies in favor of the jury's verdicts. *Jackson*, 443 U.S. at 319.  Further, the Ohio Court of Appeals applied a standard consistent with *Jackson* in finding that the jury reasonably determined Brownlee had the requisite scienter for his aggravated murder and conspiracy to murder convictions.  *Compare* ECF Doc. 11-1 at 129-33, *with Jackson*, 443 U.S. at 319; *see Early v. Packer*, 537 U.S. 3, 8 (2002) (The state court doesn't have to cite the federal standard, so long as the rule it applied is consistent with the federal standard.)

Because Brownlee can't show that the Ohio Court of Appeals made an unreasonable determination of fact or applied a standard inconsistent with Supreme Court precedent, he cannot meet his burden to show that he is entitled to habeas relief on his Ground Two sufficiency-of-the-evidence claim.  28 U.S.C. § 2254(d).  Accordingly, I recommend that Brownlee's Ground Two claim be DISMISSED as meritless.

C.    **Ground Three:  Ineffective Assistance of Counsel**

In his Ground Three claim, Brownlee argues that trial counsel was deficient for failing to ask for an accomplice testimony instruction and for failing to ensure that the recording of Motley's proffer was made available for jury deliberations.  Brownlee asserts that counsel's deficient performance prejudiced him because discrediting Motley's testimony would have required the jury to acquit him.  ECF Doc. 4 at 29-33; ECF Doc. 12 at 33-37.  Warden Black asserts that Brownlee's Ground Three claim is procedurally defaulted because he didn't raise it before the Ohio Supreme Court and meritless.  ECF Doc. 11 at 32-35.

Warden Black is correct that Brownlee's Ground Three ineffective-assistance claim is procedurally defaulted.  *O'Sullivan*, 526 U.S. at 843; *Williams*, 460 F.3d at 806.  Review of the record confirms that Brownlee never raised an ineffective-assistance-of-trial-counsel claim before the Ohio Supreme Court.  *Williams*, 460 F.3d at 806; *see generally* ECF Doc. 11-1 at 191-207.  And, because the time to raise such a claim has passed, his ineffective-assistance claim is now procedurally defaulted.  *Williams*, 460 F.3d at 806; *see also* Ohio S. Ct. Prac. R. 7.01(A)(1) (a criminal defendant must appeal a decision affirming his conviction within 45 days).  Brownlee also cannot overcome his procedural defaulted because: (1) he hasn't argued that any external cause prevented him from raising the claim before the Ohio Supreme Court; and (2) his ineffective-assistance claim doesn't rely on new evidence of actual innocence.  *Coleman*, 501 U.S. at 750; *Smith*, 780 F. App'x at 220-21; *Bousley*, 523 U.S. at 623; ECF Doc. 4 at 29-33; ECF Doc. 12 at 33-37.

Accordingly, I recommend that Brownlee's Ground Three claim be DISMISSED as procedurally defaulted.[15]

---

[15] Even if the Court were to review Brownlee's Ground Three claim on the merits, I would nevertheless recommend that it be dismissed as meritless.  Here, the Ohio Court of Appeals applied the proper

### D.        Ground Four:  Presumption of Innocence

Brownlee's Ground Four claim states only that:

The Petitioner's right to be presumed innocent was violated where a burden-shift occurred so as to relieve the government of its duty to demonstrate that the murder actually occurred at the petitioner's behest and not on the basis of an independent animus owned by the shooter himself.

ECF Doc. 1 at 11.  As supporting facts, Brownlee says "See brief in support."  ECF Doc. 1 at 11.

But unlike his other claims, Brownlee's brief in support (and his traverse) don't include any further discussion or clarity regarding his Ground Four claim or the facts upon which it is based.

*See generally* ECF Doc. 4; ECF Doc. 12.  Warden Black urges the court to dismiss Brownlee's Ground Four claim as insufficiently pleaded under Rule 2 of the Rules Governing § 2254 Cases.

ECF Doc. 11 at 35-36.

I agree with Warden Black.  Because Brownlee has not articulated the facts (or law) upon which his Ground Four claim is based, it must be DISMISSED as insufficiently pleaded.  Rules Gov. § 2254 Cases, R. 2(c) ("The petition must: (1) specify all the grounds for relief available to the petitioner; [and] (2) state the facts supporting each ground . . ."); *see also McFarland v. Scott*, 512 U.S. 849, 856 (1994) (A court may summarily dismiss a habeas claim if the petitioner does not meet the "heightened pleading requirements" under Rule 2.).  Further, to the extent

---

standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984) (An ineffective-assistance claim requires the petitioner to show *both* deficient conduct and prejudice.).  ECF Doc. 11-1 at 136, 139.  The Ohio Court of Appeals reasonably found that the absence of an accomplice testimony instruction didn't prejudice Brownlee when: (1) recorded jailhouse conversations between Brownlee and Motley and Williams's girlfriend's testimony could have established his guilt even if the jury disregarded all of Motley's testimony; and (2) the trial court gave the jury other instructions directing the jury to consider Motley's interest in testifying and noting that they could assess his credibility in determining whether to believe his testimony.  ECF Doc. 11-1 at 135-37; *see also* ECF Doc. 11-7 at 172-75.  And the Ohio Court of Appeals also reasonably found that Brownlee wasn't prejudiced by the absence of the recording at deliberations because: (1) counsel had played the exculpatory portion of the recording for the jury during the trial; and (2) other portions of the recording were *inculpatory*.  ECF Doc. 11-1 at 139-40.  Thus, Brownlee cannot meet his burden to show that the Ohio Court of Appeals unreasonably rejected his ineffective-assistance-of-trial-counsel claims.  28 U.S.C. § 2254(d).

24

Brownlee's Ground Four claim is duplicative of the bias claims raised in his Ground One claim and sufficiency claim raised in his Ground Two claim, it would fail for the reasons discussed above in regard to those claims.

## III. Certificate of Appealability

### A. Legal Standard

Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks the requirement of 28 U.S.C. § 2253(c)(3) that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)." Rule 11(a). In light of the Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, a recommendation regarding the certificate of appealability issue is included here.

Under 28 U.S.C. § 2253(c)(1)(A), this court will grant a COA for an issue raised in a § 2254 petition only if the petitioner has made a substantial showing of the denial of a federal constitutional right. *See Cunningham v. Shoop,* 817 F. App'x 223, 224 (6th Cir. Aug 24, 2020). A petitioner satisfies this standard by demonstrating that reasonable jurists "could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Buck v. Davis,* 137 S. Ct. 759, 773 (2017) (quoting *Miller-El v. Cockrell,* 537 U.S. 322, 327, 336 (2003)); *see also Slack v. McDaniel,* 529 U.S. 473, 484 (2000). When a claim is denied on procedural grounds, the petitioner must show "that jurists of reason would find it debatable whether the petition states a

valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack,* 529 U.S. at 484.

### B. Analysis

If the Court accepts my recommendations, Brownlee will not be able to show that the Court's rulings on his claims are debatable among jurists of reason.  All of the sub-claims in Brownlee's Ground One claim are noncognizable, procedurally defaulted, or meritless.  His Ground Two claim is meritless in part, and it fails to meet the jurisdictional requirements under 28 U.S.C. § 2254(a) in part.  Brownlee's Ground Three claim is procedurally defaulted and meritless.  And his Ground Four claim is insufficiently pleaded (or duplicative of the other noncognizable, procedurally defaulted, and/or meritless claims in his petition).  Because jurists of reason would not find debatable that habeas relief is not available for any of the claims raised in Brownlee's petition, I recommend that the Court decline to issue a certificate of appealability.

## IV. Recommendation

Because all of Brownlee's claims are noncognizable, procedurally defaulted, meritless, and/or insufficiently pleaded, I recommend that all of Brownlee's claims be DISMISSED and that his petition for writ of habeas corpus be DENIED.  I further recommend that Brownlee not be granted a certificate of appealability.

Dated: July 13, 2021

Thomas M. Parker
United States Magistrate Judge

_____

**OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after being served with a copy of this document.  Failure to file

objections within the specified time may waive the right to appeal the District Court's order.  *See U.S. v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn,* 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986).